**ST. LOUIS–S. F. RY. CO.**

v.

**THOMPSON et al.**

No. 8379(3).

United States District Court,
E. D. Missouri, E. D

Oct. 1, 1953.

58

John E. McCullough, St. Louis, Mo., for plaintiff.

Toll R. Ware, St. Louis, Mo., for defendants.

HARPER, District Judge.

This is a suit arising out of a dispute between the plaintiff and defendants over the division of revenue arising from the transportation of 7,131 tank cars of crude petroleum oil, transported from Greig, Oklahoma, to Selmaville, Illinois, during the period from June 1, 1944, to October 31, 1945. The parties plaintiff and defendants are railroads engaged in interstate commerce, subject to the Interstate Commerce Act, and while all parties are Missouri corporations, jurisdiction of this court is conferred by the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.

The cars in question were routed via the St. Louis-San Francisco Railway Company (hereinafter referred to as Frisco), from Greig, Oklahoma, to St. Louis, Missouri, thence via Missouri Pacific Railroad Company (hereinafter referred to as Missouri Pacific), to Flinton, Illinois, thence via Missouri-Illinois Railroad Company (hereinafter referred to as Missouri-Illinois), to Selmaville, Illinois, and so moved. This routing of the cars was over a through route to which a joint through rate was applicable. The division of the freight rates was made by the Missouri-Illinois, the settling carrier, and 22% of the total revenue was allotted to the Missouri-Illinois, and 78% to the Frisco and Missouri Pacific, of which 78% the Frisco was allotted 65% and the Missouri Pacific 35%.

The plaintiff (the Frisco) objected to this distribution and ultimately this suit was brought. The only question before the court is whether the Missouri-Illinois, the settling carrier, properly divided the revenue. It is undisputed that Southwestern Lines Division Sheet 100 and the supplements thereto in force and effect during the period in which the shipments were made governed the division of revenue. The Missouri-Illinois interpreted the Division Sheet and supplements thereto as providing that the gateway for division purposes was Flinton, Illinois, whereas the plaintiff contends that the gateway for division purposes was St. Louis, Missouri-East St. Louis, Illinois. The question for the court is the interpretation of the contracts between the parties, to wit, the Division Sheet and the supplements thereto, since they form the basis for division of revenue. Division Sheet 100 when originally issued in 1931 did not apply to the Missouri-Illinois. As a result of the supplements to the Division Sheet, after 1942, by agreement the Missouri-Illinois made the Division Sheet applicable to it. Under the Division Sheet as originally issued, St. Louis-East St. Louis was one of the divisional gateways, and when the Missouri-Illinois became a party to the Division Sheet, Kellogg, Illinois, was established as one of the divisional gateways, and thereafter Flinton, Illinois, was established as one of the divisional gateways. It is undisputed that in certain instances under the Division Sheet and the supplements thereto, St. Louis, Missouri-East St. Louis, Illinois; Kellogg, Illinois; and Flinton, Illinois, are divisional gateways. With respect to the shipments in question, the interchange at Flinton was intra rather than inter-territorial, and under the principles and formula set up in Division Sheet 100 and supplements thereto, the gateway for division purposes on the freight in question would be at St. Louis, Missouri-East St. Louis, Illinois, unless there was a specific exception making Flinton the gateway. The supplements set forth a number of exceptions to the principles and formula

of the Division Sheet, but the court is unable to find any exception with respect to the movement in question. The Division Sheet does not deal with each gateway individually, but assumes that certain principles will determine which gateway governs, unless specifically provided to the contrary. There is nothing in the supplements to the Division Sheet to indicate that St. Louis, Missouri-East St. Louis, Illinois, is not the division point, and absent such a specific provision, the broad plan and its established principles would lead us to the conclusion that St. Louis-East St. Louis was the gateway for division purposes for the shipments in question, since it was at that point that there was an interchange between the two territories and between carriers. The plaintiff is therefore entitled to judgment with interest from the date of its demand.

Attorneys for the plaintiff will prepare the Findings of Fact, Conclusions of Law and Judgment to be entered, and in preparing such will use St. Louis, Missouri-East St. Louis, Illinois, as the gateway for the purpose of dividing the revenue rather than Flinton, Illinois, as was used by the Missouri-Illinois.